AO91 (Rev. 12/03) Criminal Complaint

# UNITED STATES DISTRICT COURT

DISTRICT OF _____

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2006 NOV 27 PM 3:51

BY _____
DEPUTY CLERK

UNITED STATES OF AMERICA
V.
CRAIG BETHEA

**CRIMINAL COMPLAINT**

Case Number: 2:06-mj-80

(Name and Address of Defendant)

I, the undersigned complainant state that the following is true and correct to the best of my knowledge and belief. On or about  4/12/2006  (Date) in  Bennington  County, in the _____ District of  Vermont  defendant(s) did,

*(Track Statutory Language of Offense)*

possess with intent to distribute cocaine base,

in violation of Title  21  United States Code, Section(s)  841(a)(1), (b)(1)(A) .

I further state that I am a(n)  Detective, SVDTF  and that this complaint is based on the following facts:
Official Title

See attached affidavit.

Continued on the attached sheet and made a part of this complaint:  ☑ Yes  ☐ No

_____
Signature of Complainant

Michael W. Plusch
Printed Name of Complainant

Sworn to before me and signed in my presence,

11/27/2006                                           at    Burlington             VT
Date                                                       City                   State

WILLIAM K. SESSIONS III    US District Judge          _____
Name of Judge              Title of Judge              Signature of Judge

## AFFIDAVIT

Michael W. Plusch, being duly sworn, hereby deposes and states as follows:

1. I am a full time certified Law Enforcement Officer in Vermont and have been so since May 2000. I am currently assigned to Headquarters as a Detective with the Southern Vermont Drug Task Force.

2. I am aware of facts that give me probable cause to believe that Craig BETHEA have committed the offense of possession of cocaine base with intent to distribute, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A).

3. I have not set forth all facts I know from my investigation into this matter. Rather, I have only included those facts which I believe establish probable cause to believe that BETHEA committed the foregoing offense. My knowledge comes from my own investigation and interviews in this matter, as well as from information conveyed to me by other law enforcement personnel.

4. On December 21, 2005, I was introduced to a person (CI) who could purchase illegal drugs from targets in the Bennington, Vermont, area. The CI was cooperating with law enforcement in consideration of his/her pending criminal charges. One of the persons from whom the CI said he/she could purchase drugs was BETHEA.

5. On January 20, 2006, under law enforcement supervision and surveillance, the CI made arrangements in a monitored telephone call to purchase $350 worth of crack cocaine (approximately 1/4 ounce) from BETHEA. After several attempts to meet, the CI purchased approximately 8.3 grams of a substance that field tested positive for crack cocaine from BETHEA at his residence located at 115 Branch Street in Bennington, Vermont.

6. On January 25, 2006, under law enforcement supervision and surveillance, the CI

1

attempted to make a second purchase of crack cocaine from BETHEA. After the CI spoke with BETHEA and confirmed that he would be at his residence, the CI went to BETHEA's residence. I overheard BETHEA tell the CI that he would not be able to sell the CI any crack cocaine, but BETHEA said that he had "dogfood" available. Based on my training and experience, I know that the term "dogfood" is used as a code for heroin. The CI exited the residence and met with me. After I met with him/her and discussed the heroin and its packaging and price, the CI returned to BETHEA's residence, where he/she purchased for $200 approximately 4.4 grams of a substance that field tested positive for heroin from BETHEA. The heroin was packaged in 10 small wax packages contained in a plastic baggie.

7. On January 25, 2006, under law enforcement supervision and surveillance, the CI purchased heroin a second time from BETHEA at his residence. For $200, the CI received from BETHEA another 10 small wax packets that contained approximately 3.7 grams of a substance that field tested positive for heroin.

8. On April 12, 2006, a warrant to search BETHEA's residence located at 115 Branch Street in Bennington, Vermont was issued and executed. BETHEA was in the residence during the search. Approximately 26.8 grams of cocaine base, 11.5 grams of powder cocaine, and 140 bags of heroin were found on his person, as well as $2,336 in United States currency. Also found during the search was 1,130 bags of heroin, approximately 131.8 grams of cocaine base, and approximately 48.4 grams of powder cocaine. Samples of the crack cocaine, cocaine, and heroin field-tested positive.

9. Ranee Shakir, who also lived at the residence, was present when the warrant was executed. Shakir stated that she was aware that drugs were being sold out of her residence, and that

it was being done with her permission. Shakir allowed BETHEA to sell drugs from her residence because he paid all of her bills except for rent. She knew that BETHEA had large quantities of cocaine and heroin in the residence, but she did not know where he kept it. Shakir also stated that seconds before the search warrant was executed, BETHEA told Shakir that he had a lot of "work" that he was going to hide in the basement. Shakir explained that the term "work" was BETHEA's term for drugs. Shakir said that she and BETHEA had this conversation while standing in the kitchen. During the search warrant, the large quantities of heroin and cocaine were found on the kitchen counter. The packaging of the drugs on the kitchen counter matched the packaging of the drugs found on BETHEA's person.

Dated at Burlington, in the District of Vermont, this 27 day of November, 2006.

DETECTIVE MICHAEL W. PLUSCH
Southern Vermont Drug Task Force


Sworn to and subscribed before me this 27 day of November 2006.

HONORABLE WILLIAM K. SESSIONS III
CHIEF UNITED STATES DISTRICT JUDGE