```
                    UNITED STATES DISTRICT COURT
                        DISTRICT OF VERMONT


UNITED STATES OF AMERICA     :
                             :
     v.                      :         File No. 1:07-CR-3
                             :
CRAIG BETHEA                 :
_____    :
```

RULING ON DEFENDANT'S MOTIONS TO SUPPRESS
(Papers 21 and 23)

I.  Introduction

Now before the Court are Defendant Craig Bethea's Motions to Suppress evidence which the government seeks to admit against him.  On September 19, 2007 the Court heard oral argument on Defendant's motions; neither party introduced testimonial evidence.  For the reasons set forth below, Defendant's motions are denied.

II.  Background

The following facts underlie Defendant's motions.  On December 21, 2005 Detective Michael W. Plusch ("Plusch") of the Bennington Police Department, currently assigned to the Southern Vermont Drug Task Force, was introduced to a confidential informant ("CI") who stated he/she could purchase illegal drugs from several individuals in the Bennington, Vermont area, including Defendant.  The CI was cooperating with law enforcement to receive consideration on pending state criminal charges.

1

On January 10, 2006 the CI and Plusch signed a document entitled "Permission To Intercept Oral Communication," by which the CI "voluntarily and freely" gave consent to having his/her conversations monitored and recorded.  Thereafter, Plusch and the CI initiated several controlled purchases of illegal drugs from Defendant.  The first occurred on January 20, 2006 when the CI, under law enforcement supervision and surveillance, arranged by telephone to purchase approximately a quarter ounce of crack cocaine from Defendant for $350.  After finalizing the details of the meeting, the CI proceeded to Defendant's residence at 115 Branch Street in Bennington, Vermont and bought 8.3 grams of crack cocaine from Defendant.

The second set of purchases occurred around January 25, 2006 when the CI, again under law enforcement supervision and surveillance, attempted to purchase crack cocaine from Defendant at his 115 Branch Street residence.  Upon the CI's arrival there, Plusch overheard Defendant tell the CI he was out of crack cocaine but could sell him/her some heroin.  After discussions with Plusch about how to proceed, the CI returned twice to 115 Branch Street and purchased from Defendant: (1) 4.4 grams of heroin in 10 small wax packages for $200; and (2) 3.7 grams of heroin in 10 small wax packets for $200.  Officers did not arrest Defendant at this point.

On April 10, 2006 115 Branch Street resurfaced on Plusch's radar screen when he joined members of the Rutland Police Department ("RPD") in surveilling a white jeep believed to be picking up controlled substances in Bennington. Plusch observed the jeep parked behind Henry's Market in Bennington, a location Plusch knew to be about a half block from 115 Branch Street. The driver of the jeep, later identified as Kristen Celentano, left the vehicle for some time and eventually returned in the evening to drive to Rutland. Once in Rutland, the RPD stopped the jeep and found Celentano to be in possession of 15 baggies of heroin and 5 grams of crack/cocaine. Celentano said she had purchased the drugs from a female named Ranee. Plusch was aware that an individual named Ranee Shakir lived at 115 Branch Street.

On April 12, 2006 Plusch sought a state court warrant to search the 115 Branch Street residence for illicit drugs and a number of items evidencing illegal drug activity. In the supporting affidavit, Plusch explained his law enforcement experience and familiarity with drug investigations, controlled purchases involving CIs, and items commonly evidencing drug trafficking. The affidavit detailed Plusch's December 2005 introduction to the CI in this case, the January 2006 controlled purchases from Defendant at 115 Branch Street, and Plusch's April 10, 2006 involvement with the RPD's surveillance of Celentano and Celentano's admission she had purchased drugs from an individual

named Ranee.  The affidavit further explained that an individual named Ranee Shakir lived at 115 Branch Street in Bennington and had a listed telephone number of 802.442.9226 - the same number found on the cell phone of an individual named Jeffrey Scarborough who had been arrested on April 10, 2006 for the sale of 2 ounces of cocaine.

Based upon Plusch's affidavit, on April 12, 2006 the state court issued a search warrant authorizing law enforcement to search 115 Branch Street for illicit drugs and items evidencing drug trafficking such as distribution records, address books, telephone numbers and receipts.  As issued, the search warrant was slightly more limited than had been requested by law enforcement - notably, authorization to search for "United States currency" was changed to "United States currency documented by serial numbers as buy money," and the judge struck that portion of the search warrant application asking to search for jewelry, financial instruments, photographs, videotapes or film.

On April 13, 2006 law enforcement executed the search warrant.  Upon entering the 115 Branch Street residence, Plusch recognized Defendant and arrested him for the prior sales of crack cocaine and heroin.  A search of Defendant's person revealed 26.8 grams of cocaine base, 11.5 grams of powder cocaine, 140 bags of heroin, and $2,336 in United States currency.  Ranee Shakir was also arrested inside the home and

4

found to have $310 on her person.  Having made these two arrests, officers conducted their search of the residence and discovered in the kitchen 1,130 bags of heroin, 131.8 grams of cocaine base, and 48.4 grams of powder cocaine.

III. Discussion

    A.   The search warrant and search

Defendant first argues everything seized on April 13, 2006 should be suppressed because the search warrant was issued without probable cause.  In Illinois v. Gates, 462 U.S. 213 (1983), the Supreme Court set forth a "totality of the circumstances" test for determining whether probable cause supports a search warrant.  Under this test, the reviewing court does not engage in a hypertechnical review of the sufficiency of the affidavit but rather ensures that the issuing judge had a substantial basis for concluding probable cause existed.  Id. at 238-39.

Here, Plusch's affidavit clearly provides a substantial basis for concluding evidence of narcotics offenses would be found at 115 Branch Street.  In addition to detailing the CI's identification of Defendant and subsequent supervised drug transactions at 115 Branch Street, it also links 115 Branch Street with illegal drug activity based on the April 10, 2006 events.  Contrary to Defendant's position, the events of April 10, 2006 could hardly be considered stale as of April 12, 2006.

Moreover, that Ranee Shakir's listed telephone number had been found in the cell phone directory of an individual just arrested for the sale of two ounces of cocaine only strengthens the inference 115 Branch Street was closely associated with narcotics offenses.[1]

Defendant relatedly argues the warrant was overbroad because there was no reason to believe the search would reveal any items listed in the warrant apart from illicit drugs.  Plusch's affidavit, however, establishes his expertise in drug investigations and knowledge of items commonly evidencing illegal drug activity.  Additionally, the affidavit associates significant drug transactions involving several individuals with 115 Branch Street.  When considered as a whole, therefore, it can be reasonably believed that 115 Branch Street was a drug storage facility or distribution center of some consequence containing all of the items listed in the warrant.

Defendant next argues the $2,336 seized from his person should be suppressed because it was not authorized by the search warrant, <u>i.e.</u>, the currency was not "documented by serial number as buy money."  Apart from the search warrant though, the

---

[1]The Court recognizes the possibility always exists that a CI will make up a story while pretending to cooperate so as to harass someone or simply receive leniency.  But under the circumstances here, including multiple supervised transactions and corroboration by events not involving the CI, common sense dictates it is more likely than not no such deception was at play.

6

officers had an independent basis to seize this currency - the search incident to arrest doctrine.  Stated another way, "[t]he fact of a lawful arrest, standing alone, authorizes a search." Michigan v. DeFillippo, 443 U.S. 31, 35 (1979).  Of course, for the officers to have been authorized by this doctrine, there must first have been a valid arrest, which Defendant contests by separate motion.[2]  Because the Court finds Defendant was validly arrested (as will be discussed in Part B below), there is ultimately no basis to suppress the $2,336.[3]

Finally, Defendant challenges the monitored telephone conversations as forming the basis for the warrant because there is no evidence the CI consented to such monitoring.  Defendant concedes though that "[a]uthorization for such monitoring by the CI, prior to the monitoring, would theoretically remove the monitoring from the prohibitions of the [Federal Wiretap Statute]."  (Paper 23 at 7).  Since this argument was first

---

[2]The space and time limitations of the search incident to arrest doctrine are not an issue because as Defendant acknowledges, "[t]he search of his person was incident to and subsequent to the arrest, and he was removed from the premises before the search was conducted."  (Paper 21 at 2).

[3]To the extent Defendant references the $310 seized from Ranee Shakir's person, he has failed to establish standing to object to it.  See, e.g., United States v. Deninno, 29 F.3d 572, 576 (10th Cir. 1994) ("It is fundamental law that a person desiring to have evidence suppressed must first show he has standing to object to the search.").  Even so, the search incident to arrest doctrine would be equally applicable to the seizure of the $310.

advanced, the government disclosed the "Permission To Intercept Oral Communication," by which the CI "voluntarily and freely" consented on January 10, 2006 to having his/her conversations monitored and recorded.  This form, coupled with the fact that the CI contacted Defendant and allowed law enforcement to monitor the conversations, evidences the CI's voluntary consent.  See United States v. Amen, 831 F.2d 373, 378 (2d Cir. 1987) (explaining that consent is to be construed broadly under the Federal Wiretap Statute); United States v. Bonanno, 487 F.2d 654, 658-59 (2d Cir. 1973) ("[I]t will normally suffice for the government to show that the informer went ahead with a call after knowing what the law enforcement officers were about.").

Accordingly, neither the search warrant nor search provide a basis for suppression.[4]

B.  The arrest

The Court next turns to Defendant's contention, rooted in Payton v. New York, 445 U.S. 573 (1980), that his warrantless arrest inside his home treaded upon the Fourth Amendment.

Although it appears the Second Circuit has not addressed an arrest under these precise circumstances, the First Circuit has, concluding "once the police gain lawful entry to residential

---

[4] Even if the warrant were overbroad or not supported by probable cause, the Court would still find suppression inappropriate because the search was conducted in good faith reliance on the warrant.

8

premises (as by a search warrant), an immediate arrest is permissible without a separate arrest warrant as long as evidence known to the officers before the search supplies probable cause for the arrest."  United States v. Winchenbach, 197 F.3d 548, 554 (1st Cir. 1999).  This is so, reasoned Winchenbach, because Payton is primarily concerned with the "unauthorized entry into a dwelling" - a concern that evaporates when the home entry is supported by a valid search warrant.  Id. at 553-54.

Finding it well-reasoned and on point, the Court adopts Winchenbach's analysis.  Having already decided officers lawfully entered the 115 Branch Street home pursuant to a valid search warrant, therefore, the remaining inquiry is whether probable cause to arrest Defendant existed prior to the home entry.  Probable cause to arrest exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested."  Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) (internal quotation marks and citation omitted).  Here, probable cause to arrest developed when Plusch and the CI engaged in three controlled purchases of illegal drugs from Defendant.

Accordingly, the arrest was valid and does not provide a basis to suppress any evidence.

IV.  Conclusion

    For these reasons, Defendant's Motions to Suppress (Papers 21 and 23) are DENIED.

    SO ORDERED.

    Dated at Brattleboro, in the District of Vermont, this 12th day of October, 2007.

                                      /s/ J. Garvan Murtha
                                      J. Garvan Murtha
                                      United States District Judge