UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

v.                                                                                              Crim. No. 1:07-CR-03

Craig Bethea,

        Defendant.


## REPORT AND RECOMMENDATION
(Doc. 105)

      Craig Bethea, proceeding *pro se*, has moved under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence in connection with his 2009 conviction in this District for conspiracy to distribute controlled substances. (Doc. 105.) On December 10, 2008, Bethea entered a conditional guilty plea to one count of conspiracy to distribute heroin and fifty grams or more of cocaine base, in violation of 21 U.S.C. §§ 841 and 846. (Doc. 109-1 at 131.) He now seeks to have his sentence vacated, set aside, or corrected, raising several claims of error arising from a state court-issued electronic or "wire" warrant, as well as alleged violations of his right to a speedy trial and his Sixth Amendment right to effective assistance of counsel. (Doc. 105.) For the reasons set forth below, I recommend that Bethea's Motion be DENIED.

## Background

I.    **Offense Conduct**

      The following facts reflect the findings entered by the District Court in proceedings on Bethea's motions to suppress evidence. On December 21, 2005,

Detective Michael Plusch of the Southern Vermont Drug Task Force was introduced to a confidential informant ("CI") who stated he could purchase controlled substances from several individuals, including Bethea, in the Bennington area. (Doc. 37 at 1.) The CI and Detective Plusch signed a document entitled "Permission To Intercept Oral Communication." (Doc. 37 at 2.) By signing the document, the CI "voluntarily and freely" consented to having his conversations monitored and recorded. (*Id.*) In addition, Plusch obtained a "wire warrant" to record the conversations under Vermont law because "obtaining evidence by electronic monitoring in a defendant's home without his consent and without prior court authorization violates Article 11" of the Vermont Constitution. *State v. Blow*, 157 Vt. 513, 520 (1991); *United States v. Bethea*, 388 F. App'x 20, 21 n.2 (2d Cir. 2010).

Subsequently, in January 2006, Plusch and the CI initiated several controlled purchases of illegal drugs from Bethea at his residence, 115 Branch Street in Bennington. The transactions were recorded through the CI's wire. (Doc. 37 at 2.) Plusch did not arrest the defendant at that time. (*Id.*)

On April 10, 2006, Plusch joined members of the Rutland Police Department in surveilling a white jeep. The driver of the white jeep was believed have purchased illegal drugs from an individual residing at Bethea's address. (Doc. 37 at 3.) The driver was arrested and found to be in possession of fifteen baggies of heroin and five grams of crack cocaine. The driver admitted to purchasing the drugs from an individual named Ranee who lived at 115 Branch Street. (*Id.*)

2

On April 12, 2006, Plusch sought a state court warrant to search 115 Branch Street for controlled substances and other specified items indicative of drug activity. (*Id.*) In the affidavit supporting the warrant application, Plusch described his drug investigation experience, the January 2006 controlled purchases, and Plusch's involvement in the April 10, 2006 arrest of the driver of the white jeep. (*Id.*) Based on the affidavit, the state court issued a search warrant authorizing a search of 115 Branch Street for controlled substances, drug distribution records, address books, telephone numbers and receipts. (Doc. 37 at 4.) The judge, however, struck portions of the warrant and narrowed the scope of Plusch's request to search for United States currency. (*Id.*)

Law enforcement executed the search warrant on April 13, 2006. Upon entering 115 Branch Street, Plusch recognized Bethea from his involvement in the January controlled purchases and arrested him. (*Id.*) The search of 115 Branch Street yielded 1,130 bags of heroin, 131.8 grams of cocaine base, and 48.4 grams of powder cocaine. (*Id.*) A search of Bethea's person yielded 26.8 grams of cocaine base, 11.5 grams of powder cocaine, 140 bags of heroin, and $2,336. (*Id.*) In April of 2006, Bethea was charged in state court with drug distribution offenses arising from this conduct.

**II.     Criminal Proceedings in The District Court**

While Bethea was in state custody, on November 27, 2006 the federal government used the same conduct underlying the state charges to file a criminal complaint against Bethea for possession with intent to distribute a controlled substance. (Doc. 1; Doc. 36 at 2.) Bethea had his initial appearance in federal court on December 29, 2006, and was ordered detained in federal custody. (Doc. 4.) An indictment was filed on January 10,

3

2007 which charged Bethea with possession with intent to distribute heroin and more than fifty grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). (Doc. 8.)  Following several pre-trial motions, a five-count superseding indictment was filed on July 31, 2008, adding a conspiracy count and three counts of distribution of controlled substances.  (Doc. 65.)

### III. Motions to Suppress

Bethea was represented in the District Court by two attorneys who each filed several motions to suppress and motions to dismiss the indictment, dated June 15, 2007 and February 15, 2008.  (Docs. 21, 22, 23, 35, 47.)  The first motion argued that the fruits of the search of 115 Branch Street should be suppressed because Bethea "was arrested within his residence without a warrant" and without probable cause because the arrest occurred prior to the search.  (Doc. 21 at 1.)  The second motion argued that all items seized from 115 Branch Street should be suppressed because the state court search warrant lacked probable cause, contained stale information, was overbroad, and the wire evidence was obtained unlawfully.  (Doc. 23.)

The District Court denied these motions, finding that Bethea's arrest and the search warrant of 115 Branch Street were lawful.  (Doc. 37)  Specifically, the District Court concluded that the affidavit information was not stale, the warrant was not overbroad, and the warrant "clearly provid[ed] a substantial basis for concluding evidence of narcotics offenses would be found at 115 Branch Street."  (Doc. 37 at 5.) The Court also stated that "even if the warrant were overbroad or not supported by probable cause, the Court would still find suppression inappropriate because the search

4

was conducted in good faith reliance on the warrant." (Doc. 37 at 8 n.4.) The District Court also found that evidence of the CI's phone calls with Bethea were properly obtained through the wire warrant under the federal wiretap statute, the CI validly consented to the electronic monitoring, and the recorded calls constituted probable cause for the search warrant. Finally, the District Court concluded that police lawfully arrested Bethea based upon "evidence known to the officers before the search." (Doc. 37 at 9.)

The third motion questioned the validity of the CI's consent to the electronic monitoring of his conversations through the wire under state and federal law, and accordingly sought to suppress all evidence obtained from the wire recordings. (Doc. 47.) In denying this motion without a hearing, the District Court ruled that federal law, not state law governed the wire warrant, and that it had already ruled that the recordings were properly obtained under federal law. (Doc. 51.)

Bethea was then granted permission from the Court to file an additional motion to suppress *pro se* on June 19, 2008. (Doc. 56.) Bethea's *pro se* motion set forth arguments similar to those described above and argued by his attorneys, except that he did not re-assert that the search warrant for 115 Branch Street was invalid, only that the wire warrant was illegal. The District Court also denied this motion without a hearing. (Docs. 56, 68); *Bethea*, 388 F. App'x at 21 n.1. The District Court again emphasized that federal law governed the issue of the wire evidence, and that warrantless surveillance is lawful under federal law if one of the participants in the monitored conversations consents, as was the case here.

### IV.  Bethea's Conditional Guilty Plea

On November 20, 2008, a plea agreement was filed in which Bethea agreed in writing to "plead guilty to Count 1 of the [Superseding] Indictment charging him with conspiracy to distribute heroin and 50 grams or more of a mixture or substance containing a detectible amount of cocaine base." (Doc. 80 ¶1.)  Bethea acknowledged in the agreement that he was subject to a mandatory minimum term of imprisonment of ten years, pursuant to 21 U.S.C. § 841(b)(1)(B).[1]  (Doc. 80 ¶2.)  Bethea and the Government agreed that the appropriate term of imprisonment was fifteen years, or 180 months. (Doc. 80 ¶6.)  The agreement further provided that Bethea reserved the "right to appellate court review of the district court's ruling (denying defendant's *pro se* motion to suppress) dated August 8, 2008.  Defendant understands, and has had explained to him by counsel, that by pleading guilty he is giving up his right to appeal any other adverse pretrial determination." (Doc. 80 ¶8); *see* Fed. R. Crim. P. 11(a)(2).  The agreement was a binding plea agreement made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).

On December 10, 2008, Bethea appeared before U.S. District Judge J. Garvan Murtha to change his plea.  (Doc. 82.)  The transcript of that proceeding reveals that

---

[1] Statutory penalties for crack cocaine offenses were amended by the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010).  Before these amendments, the statutory penalty range for a first-time crack cocaine trafficking offense in the amount of 50 grams or more was ten years to life. *See* Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, 100 Stat. 3207 (1986); 21 U.S.C. § 841(b)(1)(A)(iii).  After the amendments, the statutory penalty range for trafficking crack cocaine in an amount greater than 28 grams but less than 280 grams changed to five to 40 years.  The Fair Sentencing Act went into effect on November 1, 2010 and does not state whether the reduced minimum penalties apply retroactively.  The First Circuit recently held that the reduced mandatory minimums applied to a defendant who pleaded guilty to the sale of cocaine base prior to the enactment of the Fair Sentencing Act but who was sentenced after the enactment. *United States v. Douglas*, No. 10-2341, 2011 WL 2120163, at *4-5 (May 31, 2011).

during the change of plea proceeding, Judge Murtha reviewed the terms of the plea agreement with Bethea, stating:

>[Court]:  I'm going to ask you now a few questions about the plea agreement you have signed with the government.
>
>[Bethea]:  Yes, Your Honor.
>
>. . . .
>
>[Court]:  Now, you are agreeing under a rule of the federal rules of . . . criminal procedure known as 11(c)(1)(C) that a sentence of 15 years of imprisonment is the appropriate disposition of the case.  You understand that?
>
>[Bethea]:  Yes, sir.
>
>[Court]:  That means you're entering into an agreement with the government that the judge, whether it be me or some other judge, must impose the 15 year term of imprisonment. . . .
>
>[Bethea]:  Yes, sir.
>
>. . . .
>
>[Court]:  Now in paragraph eight [of your plea agreement], again pursuant to a rule of the federal rules of criminal procedure, this time 11(a)(2) you are agreeing that you do and will have the right to appellate court review of the district court's ruling . . . denying your pro se Motion to Suppress dated August 8, 2008, and you understand and it's been explained to you by [your attorney] that by pleading guilty you're giving up your right to appeal any other adverse pre-trial determination.  You understand that?
>
>[Bethea]:  Yes, sir.

(Doc. 109-1 at 125-26.)  On September 30, 2009, Bethea appeared for sentencing and Judge Murtha imposed the agreed-upon 180-month term, to be followed by a five-year term of supervised release.  (Doc. 109-1 at 153.)  Bethea timely filed a notice of appeal on October 1, 2009.  (Doc. 109-1 at 170.)

V.    **The Direct Appeal**

Bethea's appellate counsel filed a brief and appendix on February 17, 2010 in the United States Court of Appeals for the Second Circuit. (Doc. 109-1.) Bethea also filed a *pro se* supplemental brief and appendix. (Docs. 109-2, 109-3.) The briefs argued that (1) the district court erred in denying Bethea's Motion to Suppress evidence obtained pursuant to the state court-issued wire warrant; (2) the evidence was insufficient to support the conviction; (3) Bethea received ineffective assistance of counsel, (4) the search warrant for Bethea's residence lacked probable cause; (5) the warrantless arrest of Bethea in his home was unlawful; and (6) federal and state officials improperly colluded to "forum shop." The Second Circuit affirmed the conviction and District Court's ruling in a Summary Order on July 19, 2010. The Court of Appeals upheld the District Court's determination that federal law, not state law, governs the lawfulness of a search in federal criminal proceedings. *Bethea*, 388 F. App'x at 21 n.2. It further held that Bethea's remaining arguments were either waived pursuant to his plea agreement, not preserved for appellate review, or without merit. *Id.* at 22. Bethea then filed the instant motion on March 14, 2011. (Doc. 105.)

## Discussion

A person in custody under a sentence of a federal court may seek to vacate that conviction under 28 U.S.C. § 2255(a) if (1) the sentence was imposed in violation of the Constitution or laws of the United States, (2) if the court was without jurisdiction to impose such a sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack. Despite the broad

8

language of Section 2255(a), motions that allege violations of federal law are only cognizable if they involve a "fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)). The Supreme Court has defined a "miscarriage of justice" as a claim of actual innocence. *See United States v. Olano*, 507 U.S. 725, 736 (1993).

Bethea's Section 2255 motion raises several grounds for relief pertaining to the validity of the state-court issued wire warrant. (Doc. 105 at 5-15.) Specifically, in "Ground One" Bethea asserts that the wire warrant "exceeded the scope of state law." (Doc. 105 at 6.) In "Ground Two" he argues that the warrant was issued without probable cause and that the CI's cooperation with law enforcement was coerced. Bethea further asserts that Detective Plusch obtained the wire warrant "via judicial deception" and that in issuing warrants the state court judge was "nothing more than a rubber stamp for police." (Doc. 105 at 8.) In the same argument Bethea asserts that his Fourth Amendment rights were violated by the District Court "turning a 'court ordered search' into a warrantless search." (*Id.*) Bethea does not further explain this claim. In "Ground Three" Bethea asserts that he was denied due process of law by the District Court's failure to hold a hearing on his *pro se* Motion to Suppress and to permit him to cross-examine witnesses. Bethea also argues in "Ground Four" that the Government violated his speedy trial rights. Finally, in "Ground Five" Bethea sets forth an ineffective assistance of counsel claim, asserting that he was "completely denied counsel." (Doc. 105 at 14.) Bethea, who at all times was represented by counsel, contends that counsel

9

failed to follow his direction.  The Government opposes Bethea's motion, arguing that most of his claims were raised and considered on direct appeal and are therefore waived.  It also asserts that the Speedy Trial claim was not raised on appeal and is procedurally defaulted.  Alternatively, the Government contends that this claim was waived by Bethea's plea of guilty and is without merit.  Finally, it argues that Bethea's ineffective assistance of counsel claim is meritless.

I.   **All of Bethea's Claims Regarding The State Court-Issued Wire Warrant Were Raised on Direct Appeal, Found to Be without Merit, and Are Accordingly Barred.**

It is well-settled that a Section 2255 petition "cannot be used to relitigate questions which were raised and considered on direct appeal." *Reese v. United States*, 329 F. App'x 324, 326 (2d Cir. 2009) (quoting *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001)).  *See also United States v. Natelli*, 553 F.2d 5, 7 (2d Cir. 1977) ("[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be relitigated in a collateral attack under section 2255.").  Thus, if a defendant raises claims that were already litigated on direct appeal, "he will be procedurally barred from proceeding with the challenge." *Sanin*, 252 F.3d at 83.  An exception to this rule exists if "there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal." *Chin v. United States*, 622 F.2d 1090, 1092 (2d Cir. 1980).

In this case, a direct appeal of Bethea's conviction and sentence was fully litigated in the Court of Appeals.  (Doc. 109-1.)  Bethea's appellate counsel filed a brief and appendix (Doc. 109-1) and Bethea filed a *pro se* supplemental brief and appendix (Docs.

10

109-2, 109-3). The briefs raised, among other arguments, the same claims of error with respect to the validity of the wire warrant and failure to hold an evidentiary hearing. (*See, e.g.*, 109-2 at 8-10.) The Second Circuit affirmed, upholding the conviction and District Court's denial of Bethea's motions to suppress. *Bethea*, 388 F. App'x at 22. Specifically, the Court held that the wire warrant was "lawfully obtained," Bethea's arguments were "without merit" and that "[t]he informant's consent allowing the government to record the conversations rendered those recordings lawful under both Title III, *see* 18 U.S.C. § 2511(2)(c); *United States v. Friedman*, 300 F.3d 111, 120-21 (2d Cir. 2002), and the Fourth Amendment, *see United States v. Workman*, 80 F.3d 688, 694 (2d Cir. 1996)." *Bethea*, 388 F. App'x at 21.

Bethea does not assert that there has been an intervening change in the law that would have exonerated him had it been in force before his conviction was affirmed on direct appeal. Accordingly, Bethea cannot relitigate his challenges to the validity of the state court wire warrant, and the claims are procedurally barred.

## II. Bethea's Speedy Trial Claims Are Either Not Preserved or Procedurally Defaulted. In Any Event, The Claims Are Meritless.

Bethea next argues that the Government violated his rights under the Speedy Trial Act, 18 U.S.C. § 3161, and his Sixth Amendment right to a speedy trial. Generally, an individual who pleads guilty waives all pre-plea claims, including claims of Speedy Trial Act violations. *Thye v. United States*, 96 F.3d 635, 637 (2d Cir. 1996); *see United States v. Simmons*, 763 F.2d 529, 533 (2d Cir. 1985) ("[E]ntry of a conditional guilty plea preserves only the specifically mentioned issues and waives all other nonjurisdicitonal

11

claims.") Here, Bethea pleaded guilty to the conspiracy charge. Pursuant to the plea agreement, Bethea agreed that he reserved only the "right to appellate court review of the district court's ruling (denying [his] *pro se* motion to suppress)" and "that by pleading guilty he is giving up his right to appeal any other adverse pretrial determination." (Doc. 80 ¶8.) Thus, Bethea preserved only his right to appeal the District Court's denial of his *pro se* motion to suppress and he has waived his speedy trial claims.

In addition, because Bethea failed to raise the speedy trial claims on direct appeal, they are procedurally defaulted. The Supreme Court has stated that "[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (quoting *Reed v. Farley*, 512 U.S. 339, 354 (1994) (internal quotations omitted)); *see also United States v. Munoz*, 143 F.3d 632, 637 (2d Cir. 1998) ("A motion under § 2255 is not a substitute for an appeal."). Accordingly, a claim not raised on direct appeal is procedurally defaulted and cannot provide the basis for Section 2255 relief absent a demonstration of cause and prejudice or actual innocence. *See Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007).

Because Bethea failed to raise his speedy trial claims on direct appeal, he cannot now raise these arguments in a Section 2255 motion unless he demonstrates cause and prejudice or actual innocence. Bethea's motion fails to meet this burden. He sets forth no reason for his failure to raise this argument on direct appeal. Indeed, nothing prevented him from raising the claim earlier. He could have done so in his *pro se* supplemental brief. Bethea also fails to articulate prejudice resulting from any alleged speedy trial violation. Further, he has never asserted that he is actually innocent.

In any event, Bethea's speedy trial claims are without merit. Contrary to Bethea's argument, a defendant is not in federal custody for Speedy Trial Act purposes until he is taken into custody after a federal arrest for the purpose of responding to a federal charge. *United States v. Jones*, 129 F.3d 718, 721 (2d Cir. 1997). Under the Speedy Trial Act, "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). Here, Bethea was not in federal custody until the United States Marshal executed the federal warrant on December 28, 2006. An indictment was returned by the grand jury on January 10, 2007, well within the thirty-day limit. Thus, it appears the Government complied with Speedy Trial Act requirements in the initiation of the prosecution by indictment. To the extent Bethea argues that his speedy trial rights were violated under 18 U.S.C. § 3161(c), he waived any such argument upon pleading guilty pursuant to his plea agreement, and the Court need not further address it. *Thye*, 96 F.3d at 637.

### III. Bethea Fails to Establish A Claim of Ineffective Assistance of Counsel.

Finally, Bethea argues that his attorneys "repeatedly and completely ignored" his request "that they challenge the CI's consent" and that they "file his pro-se motion to dismiss the indictment." (Doc. 105 at 21.) Bethea's ineffective assistance of counsel claims are not subject to the failure-to-appeal procedural bar discussed above, and such a claim may generally be raised for the first time on collateral review. *Massaro v. United States*, 538 U.S. 500, 509 (2003).

13

A criminal defendant asserting that an attorney was constitutionally deficient must show that the lawyer's performance "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). The standard of *Strickland* "is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on [it]." *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001). A Section 2255 petition is not an opportunity to second guess sound strategy. *See Strickland*, 466 U.S. at 689 ("[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.") (quotation omitted).

The essence of an ineffective assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect. *See Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). Thus, a defendant must establish (1) that counsel made errors so serious that he was deprived of reasonably competent representation and (2) that counsel's deficient performance prejudiced the defense. *See Hernandez v. United States*, 202 F.3d 486, 488 (2d Cir. 2000) (citing *Strickland*, 466 U.S. at 687-91).

In considering an ineffectiveness claim, the Court must presume that counsel has "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment;" and that "counsel's conduct f[ell] within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689-90. Finally, "[t]he reasonableness of counsel's actions may be determined or substantially influenced

14

by the defendant's own statements or actions.  Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." *Id.* at 691.

Here, Bethea was represented by able counsel through all stages of the proceedings against him and during the negotiation of the plea agreement.  Before Bethea pleaded guilty, his counsel filed several pre-trial motions, including motions to suppress and motions to dismiss.  (Docs. 16, 21, 22, 23, 38, 47.)  His attorney also filed a Motion to Accept Defendant's Pro Se Filing, in which counsel requested that the Court accept Bethea's *pro se* motion to suppress challenging the CI's consent.  (Doc. 54.)  This Motion was granted by the District Court.  (Doc. 55.)  The other motions addressed the exact issues Bethea erroneously asserts were not addressed: the validity of the state court-issued wire warrant (Docs. 23, 47), the CI's consent to electronic monitoring (Doc. 47), and the period of incarceration between dismissal of the state charges and Bethea's arrest on federal charges (Doc. 22).  The District Court ruled on these motions and Bethea's counsel timely appealed the rulings.

In addition, Bethea's counsel effectively negotiated his plea agreement and sentence.  At his change of plea hearing, Bethea testified that, in signing the plea agreement, his counsel had explained to him what he was agreeing to and that he was satisfied with his counsel's representation and advice.  (Doc. 109-1 at 125-26, 132-33.) As a result of Bethea's offense conduct and criminal history, he could have potentially received a sentence range calculated in his pre-sentence report to be 262-327 months. (Doc. 91 at 2.)  However, his counsel successfully negotiated a sentence of 180 months.

(Doc. 96); *see United States v. Gaskin*, 364 F.3d 438, 470 (2d Cir. 2004) ("A defense attorney does not render objectively unreasonable representation when he advises his client to act in a way that secures a reduced sentence."). In short, Bethea presented no evidence that his counsel made errors of any kind and no evidence to support that his counsel's conduct fall outside the wide range of reasonable professional assistance. Accordingly, Bethea has failed to establish that his counsel was ineffective.

### Conclusion

Based on the foregoing, I recommend that Bethea's Motion to vacate, set aside, or correct his sentence (Doc. 105) be DENIED.

Dated at Burlington, in the District of Vermont, this 13th day of July, 2011.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation. *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).